Inter-State Tile and Mantel Co., Inc., Appellant, *v.* Workmen's Compensation Appeal Board and John W. Myers, Appellees.

Argued June 6, 1974, before Judges WILKINSON, JR., MENCER and ROGERS, sitting as a panel of three.

*Ronald M. Katzman,* with him *Goldberg, Evans & Katzman,* for appellant.

*John J. Krafsig, Jr.,* for appellee, Myers.

OPINION BY JUDGE ROGERS, July 10, 1974:

This case involves the application of a superseded provision of Section 306(f) of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P. L. 736, 77 P.S. §531, and should not, and will not, delay us long.

The version of Section 306(f) of the Act referred to required the employer to furnish surgical and medical services to his injured employe for a period of twelve months following disability. It further provided that the Board might order the employer to furnish medical, surgical and hospital services after the twelve months following disability if it was established that further care would result in restoring the injured employe's earning power to a substantial degree.[1] Section 306(f) was amended effective May 1, 1972, so as to require the employer to provide all surgical and medical services in connection with the employe's injuries. Act of March 29, 1972, P. L. No. 61, §12, 77 P.S. §531 (Supp. 1974-1975).

The claimant, John W. Myers, sustained back injuries in a fall at work on July 27, 1967. He submitted

---

[1] The provision read: "The board may order further medical, surgical and hospital services if it is established that further care will result in restoring the injured employe's earning power to a substantial degree. In each order the board shall specify the maximum cost of the treatment designed for the employe's rehabilitation."

to four operations on his back, performed at Harrisburg by surgeons mutually agreed upon between him and the employer's insurance carrier. None of these operations effected other than temporary relief of claimant's admittedly totally disabling and very painful back ailment. After it became apparent that the fourth operation performed in March of 1970 was unsuccessful, the claimant consulted Dr. Erwin R. Schmidt, Jr., an eminent Philadelphia orthopedic surgeon associated with the Hospital of the University of Pennsylvania. Dr. Schmidt, after examination and studies, recommended that the claimant undergo a fifth operation to be done by him as orthopedic surgeon assisted by Dr. Robert A. Groff, a neurosurgeon. The purpose of the operation was to effect a refusion of a vertebra of the spine. The claimant asked the carrier to provide this service. The carrier declined to do so, apparently because it believed that the operation could be performed less expensively in a Lancaster or Harrisburg hospital.[2] It referred Mr. Myers to another surgeon, whom he visited, but whose services he declined to accept for lack of confidence engendered by four unsuccessful operations performed by other local surgeons approved by the carrier.

By petition dated March 9, 1971, and received by the Workmen's Compensation Board on March 11, 1971, the claimant requested an order approving the services of Dr. Schmidt. Drs. Schmidt and Groff performed the fifth operation on the claimant's back on March 11, 1971 and were successful in accomplishing the needed spine fusion. The claimant testified that his condition was improved by the last operation and that as a result he has been able to attend high school and plans to

_____

[2] The carrier also declined after the fourth operation to accede to Mr. Myers' request for a neurological examination at Johns Hopkins Hospital in Baltimore.

attend college in preparation for a less physically de-
manding employment than his former occupation as a
tile setter.

The defendant carrier filed an answer to claimant's
March 1971 petition for further medical services; the
Workmen's Compensation Board in October 1971 grant-
ed the petition and directed payment of the surgeons
and hospital bills for the last operation; the carrier
took an appeal to the Common Pleas Court of Dauphin
County which in March 1972, because a record of the
hearing before the Board was unavailable, remanded;
a referee took evidence in April 1973; the record was
then returned to the Workmen's Compensation Board;
and the Board in September 1973 again granted the
claimant's petition and again ordered payment of the
surgeons and hospital bills for the fifth operation. The
employer has appealed the Board's order to us. We
affirm.

The carrier's principal contention is that the claim-
ant was not entitled to receive further medical expenses
at its hands because he refused its offer of the services
of a surgeon other than Drs. Schmidt and Groff. It
relies chiefly upon *Houlihan v. Joseph J. Scheiter &
Co.*, 166 Pa. Superior Ct. 85, 70 A. 2d 431 (1950). In
that case the employe insisted on taking physiotherapy
treatments at a hospital chosen by him and declined to
accept precisely the same type of services offered by
the employer's insurance carrier at its clinic. *Houlihan*
was plainly different from this case. While, as the
appellant argues, there is here no evidence that the
surgeon suggested by it was not competent, neither is
there evidence that its surgeon shared Dr. Schmidt's
opinion that the claimant's earning power could be re-
stored by his ministrations or that he intended to use
the skills of a neurosurgeon. The record establishes
that while Dr. Schmidt made the new fusion, Dr.
Groff removed the old fusion and lamina from the

affected vertebra which were causing pressure on the nerves in that area. Further, we believe that the provision of old Section 306(f) for further services upon order of the Board, was intended to provide in a proper case for specific services sought by the claimant. Indeed, it is difficult to understand how the Board, as it was required by the Act to do, could fix the cost of the treatment if, in the case of surgery of this magnitude, the identity of the surgeon proposed to do the work was not known when the petition was filed.

The appellant carrier makes several technical arguments, none having merit. It contends that the petition, although received by the Board on the same day Dr. Schmidt and his colleague preformed the successful operation on claimant's back, was of no effect[3] because it did not have attached Dr. Schmidt's affidavit, as required by instructions on the form provided by the Board. In fact, a letter of Dr. Schmidt dated February 11, 1971, stating that an attempt at refusion was the only means of rehabilitating the claimant for future employment, seems to have been attached to the petition and Dr. Schmidt's affidavit setting forth the costs, and containing a statement that the operation would substantially restore the claimant's earning power was later filed. The *statute* does not require an affidavit.

The carrier also argues that at least some of the expenses ordered paid by the Board were for services performed by Dr. Schmidt and care at the Hospital of the University of Pennsylvania before March 11, 1971. The cancelled checks introduced into evidence in payment of the surgeons show very clearly that they were for the operation of March 11, 1971. It is true that the claimant's testimony as to payments made by him to the hospital is somewhat confused, and that some

---

[3] Under the rule of *Pickens v. Workmen's Insurance Fund,* 140 Pa. Superior Ct. 258, 13 A. 2d 896 (1940).

of the payments referred to in claimant's testimony were for services rendered while the claimant was undergoing examination by Dr. Schmidt in February 1971. However, Dr. Schmidt's affidavit executed after the operation was performed states that the hospitalization costs for the ten days during and following the operation were $2297.80 and that the total cost of all services, including surgeons' fees, was $3522.99. These were the exact amounts awarded by the Board.

### ORDER

AND Now, this 10th day of July, 1974, it is ordered that judgment be entered in favor of John W. Myers and against Inter-State Tile & Mantel Co., Inc. and United States Fidelity & Guaranty Co. in the amount of $3522.99, with interest at the rate of six percent (6%) per annum from October 1, 1971, the date of the first order of the Workmen's Compensation Board approving these payments.

